## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**IRMA N. GARCIA**                                                                          **CIVIL ACTION**

**VERSUS**                                                                                     **No. 12-1863**

**HOUSING AUTHORITY OF NEW ORLEANS**                                     **SECTION I**

### ORDER AND REASONS

Before the Court is a motion[1] filed by defendant for partial summary judgment. In response, plaintiff filed a motion[2] for the voluntary dismissal of several of her claims which motion was granted.[3] Plaintiff also filed an opposition[4] to the motion for partial summary judgment with respect to the claims which she retained. For the following reasons, the motion is **GRANTED**.

### BACKGROUND

Plaintiff was employed by defendant, the Housing Authority of New Orleans ("HANO"), in the role of director of human resources beginning in October 2004.[5] Following Hurricane Katrina, and particularly from December 2005 through August 2006, defendant expressed dissatisfaction with plaintiff's work. Plaintiff disagrees with defendant's characterization of her job performance.[6]

---

[1] R. Doc. No. 132.
[2] R. Doc. No. 144.
[3] R. Doc. No. 148.
[4] R. Doc. No. 147.
[5] R. Doc. No. 132-1, ¶ 5; R. Doc. No. 147-1, ¶ 5.
[6] *See* R. Doc. No. 132-1, ¶¶ 6-8; R. Doc. No. 147-1, ¶¶ 6-8.

On July 13, 2006, plaintiff was demoted.[7] Plaintiff appealed her demotion to the Louisiana Civil Service Commission ("LCSC") on August 7, 2006.[8] Plaintiff was sent a pre-termination notice from Justin Ormsby, then-Appointing Authority for defendant,[9] on December 11, 2006,[10] and she was terminated in early 2007. Plaintiff also appealed the termination to the LCSC.[11] The LCSC reversed plaintiff's terminiation,[12] but plaintiff was sent another pre-termination notice by then-Appointing Authority Jeffrey Riddel on May 10, 2007,[13] and her employment was terminated for the second time in June 2007.[14]

Plaintiff filed her first EEOC charge on June 14, 2007, alleging retaliation and discrimination based on age and gender.[15] Plaintiff also filed an appeal with the LCSC on July 2, 2007.[16] Defendant eventually rescinded plaintiff's June 2007 termination,[17] but shortly thereafter on December 10, 2007, defendant sent another pre-termination notice to plaintiff, this time from then-Appointing Authority Karen Cato-Turner.[18] Plaintiff was ultimately terminated in early 2009.[19] Plaintiff also appealed this termination to the LCSC, but the LCSC denied the appeal and such denial was affirmed by the Louisiana Court of Appeal for the First Circuit.[20] Plaintiff filed a

---

[7] R. Doc. No. 132-1, ¶ 9; R. Doc. No. 147-1, ¶¶ 9-10; R. Doc. No. 132-3, at 11.

[8] R. Doc. No. 132-1, ¶ 10; R. Doc. No. 147-1, ¶ 10; R. Doc. No. 132-3, at 12.

[9] Defendant is managed by a receiver, or "Appointing Authority," who oversees HANO on behalf the U.S. Department of Housing and Urban Development ("HUD"). HUD has been in control of HANO for years pursuant to 42 U.S.C. § 1437d(g). *See McGowan v. U.S. Dep't of Hous. & Urban Dev.*, 388 F. App'x 433, 435 (5th Cir. 2010).

[10] R. Doc. No. 132-1, ¶ 11; R. Doc. No. 147-1, ¶ 11; R. Doc. No. 132-7.

[11] *See* R. Doc. No. 132-1, ¶ 12; R. Doc. No. 147-1, ¶ 12.

[12] R. Doc. No. 132-1, ¶ 13; R. Doc. No. 147-1, ¶ 13.

[13] R. Doc. No. 132-1, ¶ 14; R. Doc. No. 147-1, ¶ 14; R. Doc. No. 132-8.

[14] R. Doc. No. 132-1, ¶ 15; R. Doc. No. 147-1, ¶ 15.

[15] R. Doc. No. 132-1, ¶ 16; R. Doc. No. 147-1, ¶ 16.

[16] R. Doc. No. 132-1, ¶ 17; R. Doc. No. 147-1, ¶ 17.

[17] R. Doc. No. 132-1, ¶ 18; R. Doc. No. 147-1, ¶ 18.

[18] R. Doc. No. 132-1, ¶ 19; R. Doc. No. 147-1, ¶ 19; R. Doc. No. 132-9.

[19] R. Doc. No. 132-1, ¶ 23; R. Doc. No. 147-1, ¶ 23; R. Doc. No. 132-3, at 30.

[20] R. Doc. No. 132-1, ¶¶ 26-28, 30; R. Doc. No. 147-1, ¶¶ 26-28, 30.

second EEOC charge on August 7, 2009, but the EEOC ended its investigation without finding a violation and it issued a right to sue letter.[21]

On August 17, 2012, plaintiff filed a pro se complaint alleging a variety of claims, including discrimination based on age and gender and retaliation.[22] After three amended complaints and substantial motions practice, HANO, the sole remaining defendant in the case, filed a motion for partial summary judgment.[23] Defendant sought dismissal of plaintiff's age discrimination claims, gender discrimination claims, retaliation claims, hostile work environment claims, and breach of contract claims.[24] In response, plaintiff voluntarily dismissed her gender discrimination claims, age discrimination claims, and hostile work environment claims, but she retained all claims relating to retaliation and breach of contract.[25]

Plaintiff filed an untimely opposition to the motion for summary judgment with respect to such retained claims.[26] Defendant's motion was later converted into a motion for summary judgment with the consent of the parties.[27]

## LAW AND ANALYSIS

### A.    Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying

---

[21] R. Doc. No. 132-1, ¶ 29, 32; R. Doc. No. 147-1, ¶ 29, 32.
[22] R. Doc. No. 1.
[23] R. Doc. No. 132.
[24] R. Doc. No. 132, at 1-2.
[25] R. Doc. No. 144.
[26] R. Doc. No. 147.
[27] R. Doc. No. 154.

those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

B.      **Retaliation Claims**

      *1.      Standard of Law*

Plaintiff's retaliation claims are brought pursuant to Title VII and the Age Discrimination in Employment Act ("ADEA").[28] Title VII makes it unlawful for an employer to deprive any individual of employment opportunities, to adversely affect an employee's status, to refuse to hire, or "otherwise to discriminate with respect to [an employee's] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). It is an unlawful employment practice for an employer to retaliate against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge" pursuant to Title VII. *Id.* § 2000e-3(a); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007). Similarly, the ADEA provides:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual, member or applicant for membership has opposed any practice made unlawful by [the ADEA], or because such individual member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA].

29 U.S.C. § 623(d); *see Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225-26 (5th Cir. 1996).

A retaliation claim requires plaintiff to make a prima facie showing that: (1) plaintiff engaged in a statutorily protected activity, (2) an adverse employment action occurred, and (3) there is a causal link between the protected activity and the adverse employment action. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 n.3 (5th Cir. 2007); *Davis v. Dallas Area Rapid Transit*,

---

[28] Plaintiff also makes a passing mention of retaliation in violation of the First Amendment in her original complaint and her first amended complaint, which were filed pro se by plaintiff herself. *See* R. Doc. No. 12, ¶ 98; R. Doc. No. 1. Counsel advised the Court that plaintiff is no longer pursuing such claim which was dismissed with prejudice. R. Doc. No. 154, at 1.

383 F.3d 309, 319 (5th Cir. 2004); *see Munoz v. Seton Healthcare, Inc.*, No. 13-50500, 2014 WL 701509, at *5 (5th Cir. Feb. 18, 2014).

"The establishment of a prima facie case gives rise to an inference of retaliation. This inference, in turn, shifts the burden of proof to the defendant, who must then articulate a legitimate non-discriminatory reason for the challenged employment action." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999) (citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 41 (5th Cir. 1992)). Once the defendant has asserted such a reason, the inference created by the plaintiff's establishing a prima facie case is dropped from the case. *Id.* At this point, summary judgment is appropriate unless the plaintiff can show that the defendant's rationale is pretextual. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973)).

The causal connection standard of a prima facie retaliation case is much less stringent than the ultimate but-for cause determination. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). The ultimate determination in a retaliation case is whether the plaintiff's protected conduct was a but-for cause of the termination. *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

        2.    *Prima Facie Case*

Defendant does not make any argument with respect to the first two elements of plaintiff's prima facie case of retaliation. Defendant states in its motion for summary judgment, "While Defendant does not concede that Plaintiff can make out the first two elements necessary to state a claim for retaliation, Defendant asserts that Plaintiff cannot satisfy the burden of

establishing a causal connection between the alleged protected activity and an adverse action."[29]
Accordingly, the Court will accept, for purposes of this motion, plaintiff's statements relative to
the first two elements of her prima facie case of retaliation.[30]

      With respect to the causal connection element, defendant argues, "Because of the passage
of 19 months, Plaintiff cannot establish a prima face case of retaliation due to the lack of
temporal proximity between the filing of the 2007 claim and her termination."[31] Defendant cites
*Feist v. La. Dep't of Justice*, 730 F.3d 450 (5th Cir. 2013), for the proposition that "[a] plaintiff
alleging retaliation may satisfy the causal connection element by showing '[c]lose timing
between an employee's protected activity and an adverse action against him.'" *Id.* (alteration
original) (quoting *McCoy v. City of Shreveport* 492 F.3d 551, 562 (5th Cir. 2007)). Defendant
concludes that 19 months is too long to allow an inference of causation pursuant to Fifth Circuit
caselaw.[32]

      Defendant's argument fails, however, for two reasons. First, temporal proximity is *one*
permissible method of showing a causal connection, but it is not the *only* permissible method.
*See Smith v. Xerox Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010) (citing *Nowlin v. Resolution
Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)) (listing "temporal proximity between the
employee's conduct and termination" as only one factor that may show indicia of causation and

---

[29] R. Doc. No. 132-12, at 14-15.

[30] With regard to her protected activities, plaintiff states that "[r]etaliation began after the 1st
complaint was filed with the LCSC" in July 2006, R. Doc. No. 147-1, at 14; R. Doc. No. 147-6,
at 1, and that she "continually echoed those concerns, up until her termination in January 2009,
to HANO, [the LCSC], and the EEOC," R. Doc. No. 147, at 7 n.2. With regard to the adverse
employment actions, plaintiff states, "Not only did Plaintiff allege age and gender-based
retaliation as a result of her filing of the 2007 EEOC Charge, but she clearly indicated instances
of retaliation after June 2007, which included additional suspensions and the eventual
termination," R. Doc. No. 147, at 9; R. Doc. No. 132-3, at 10.

[31] R. Doc. No. 132-12, at 15.

[32] *See* R. Doc. No. 132-12, at 15 (citing *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001) and
*Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)).

noting that "the existence of a causal link . . . is a 'highly fact specific' and difficult question");[33]

*see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("*The cases that accept mere temporal proximity* . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close' . . . . Action taken (as here) 20 months later suggests, *by itself*, no causality at all." (emphasis added)); *McCoy*, 492 F.3d at 562 ("Close timing between an employee's protected activity and an adverse action against him *may* provide the causal connection required to make out a prima facie case of retaliation." (emphasis added) (internal quotation marks omitted)). Second, plaintiff contends, and defendant has not disputed, that she engaged in protected activities by "continually echo[ing] those concerns[] up until her termination in January 2009"[34] and that additional instances of retaliation occurred after the filing of the EEOC charge.[35]

Without any additional argument or clarifying evidence presented by either side, the Court cannot say that the passage of time extinguished any possible inference of causation. Plaintiff apparently asserts that she experienced a hostile work environment that was in retaliation for her protected activities.[36] Attempting to challenge plaintiff's prima facie case, defendant only contests the timing issue. Accordingly, it is appropriate to find, for purposes of this motion only, that plaintiff has demonstrated a prima facie case of retaliation.

---

[33] The Fifth Circuit stated, "We have previously said that indicia of causation may be seen in factors such as: (1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Smith*, 371 F. App'x at 520.

[34] R. Doc. No. 147, at 7 n.2.

[35] R. Doc. No. 147, at 9.

[36] *See* R. Doc. No. 144; R. Doc. No. 147, at 9 ("Plaintiff was not limiting HANO's violative conduct to the date of her eventual termination (January 30, 2009), but rather, was complaining about the *continuing course of retaliation* which began in early to mid-2006 and continued unabated until January 2009." (emphasis added)).

### 3. Non-Retaliatory Justification

As stated previously, once plaintiff establishes a prima facie case of retaliation, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for the adverse employment actions. *Shackelford*, 190 F.3d at 409. Defendant states that "any one of the fourteen reasons contained in [Appointing Authority] Ms. Cato-Turner's December 10, 2007 correspondence constitutes a legitimate business reason to terminate Plaintiff's employment as the director of human resources."[37] That nine-page document states: "You were notified of deficient job performance on several occasions. [For example, a] written reprimand was issued and Dan Fornerette was appointed directly over the HR function on June 6, 2006."[38] Many of the same reasons in the December 10, 2007 letter were also outlined in a December 11, 2006 letter from then-Appointing Authority Justin Ormsby.[39] Furthermore, some of the same conduct from the same time period was described in a June 7, 2007 letter from then-Appointing Authority, Jeff Riddel.[40] These letters all articulate legitimate, non-retaliatory reasons for the actions taken against plaintiff: performance issues starting post-Katrina and continuing until December 11, 2006.[41] *See, e.g.*, *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) ("Poor work performance is a legitimate, non-discriminatory reason for discharge."); *Boyd v. Dallas Indep. Sch. Dist.*, No. 08-426, 2010 WL 1687665, at *4 (N.D. Tex. Apr. 27, 2010) ("It is well established that an employee's deficient work performance is a legitimate, nondiscriminatory reason for termination."). Accordingly, the inference created by the plaintiff's establishing a prima facie case is dropped. *Shackelford*, 190 F.3d at 409.

---

[37] R. Doc. No. 132-12, at 16 (citing R. Doc. No. 132-9).
[38] R. Doc. No. 132-9, at 8. Plaintiff contends that the retaliation against her began after she filed her first LCSC complaint regarding Fornerette's appointment. R. Doc. No. 147-1, ¶ 10.
[39] *See* R. Doc. No. 132-7.
[40] *See* R. Doc. No. 132-3, at 18-19.
[41] *See* R. Doc. No. 132-7, at 1; R. Doc. No. 132-9, at 1; R. Doc. No. 132-3, at 18.

4.    *But-For Causation*

Because defendant has established a legitimate reason for all of its allegedly retaliatory actions, the burden of proof is shifted back to plaintiff. At this point, summary judgment is appropriate unless plaintiff can show that the defendant's rationale is pretextual. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 801-03). The ultimate determination in a retaliation case is whether the plaintiff's protected conduct was a but-for cause of the termination. *McDaniel*, 770 F.2d at 1346.

Plaintiff is under the impression that defendant's motion for summary judgment "was improvidently filed" and "borders upon being frivolous, if not outright crossing that line" merely because she "has consistently and repeatedly disputed those 'reasons' [for her termination] ever since they began to appear in 2006."[42] In support of such argument, plaintiff provides a block quote of six pages from *Reeves v. Sanderson v. Plumbing Prods., Inc.*, 530 U.S. 133, 143-49 (2000).[43] Plaintiff places special emphasis on what she calls the *Sanderson* paradigm:[44] "It suffices to say that, because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." *Id.* at 149.

Plaintiff's reliance on *Sanderson* is misguided because, as explained above, defendant has produced evidence of a compelling, non-retaliatory reason for any actions taken against her: defendant was dissatisfied with her job performance.[45] Plaintiff cannot rest upon her prima facie case of retaliation in the face of such evidence. The Fifth Circuit has "held that '[m]erely

---

[42] R. Doc. No. 147, at 14-15.
[43] R. Doc. No. 147, at 11-14.
[44] R. Doc. No. 147, at 14.
[45] *See* R. Doc. No. 132-7, at 1; R. Doc. No. 132-9, at 1; R. Doc. No. 132-3, at 18

disputing [an employer's] assessment of [a plaintiff's] work performance will not necessarily support an inference of pretext.'" *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) (alterations original) (quoting *Shackelford*, 190 F.3d at 408)); *see also Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'"); *Perez*, 307 F.3d at 325 (5th Cir. 2002) ("Merely disagreeing with an employer's negative performance assessment is insufficient to show pretext.").

Plaintiff "cannot survive summary judgment merely because she disagrees with [defendant's] characterization of her disciplinary history; rather, '[t]he issue is whether [defendant's] perception of [her] performance, accurate or not, was the real reason for her termination.'" *Id.* (quoting *Shackelford*, 246 F.3d at 408-09); *see also, e.g., Pfau v. Gilger*, 211 F. App'x 271, 273 (5th Cir. 2006) ("[Plaintiff] cannot necessarily answer this [ultimate] question by merely disputing [her employer's] assessment of her work performance."); *Eiland v. San Jacinto Methodist Hosp.*, No. 12-192, 2013 WL 4482839, at *5 (S.D. Tex. Aug. 20, 2013) (Hoyt, J.) ("[M]erely disputing the employer's assessment of the plaintiff's work performance 'will not necessarily support an inference of pretext.'"); *Morgan v. Ochsner Clinic Found.*, No. 12-1111, 2013 WL 1136803, at *5 (E.D. La. Mar. 18, 2013) (Brown, J.) ("[A] plaintiff cannot survive summary judgment without an actual showing that the adverse employment action was the result of discrimination."); *Smith v. Wesley Health Sys., LLC*, No. 05-2179, 2007 WL 1441201, at *7 (S.D. Miss. May 14, 2007) ("[D]isputes over performance evaluations are insufficient to support an inference of discrimination").

Other than her disagreement with defendant's characterization of her job performance, plaintiff has not identified any other evidence that would tend to show that defendant's reasons

were mere pretext. Plaintiff has not identified a single specific instance in which she was made to feel as if she was being retaliated against. In her discovery deposition, plaintiff merely states: "Based on the ongoing harassment and retaliation, it was so traumatizing. I was treated unfairly by the Housing Authority . . . ."[46]

The EEOC's preliminary investigation in response to plaintiff's 2009 charge[47] did not uncover any "evidence that would justify the continuation of the investigation."[48] Throughout the dozens of exhibits and hundreds of pages of summary judgment evidence submitted by both plaintiff and defendant, there is neither a passing mention nor any concrete allegation of a comment from any of plaintiff's supervisors or colleagues regarding plaintiff's age, race, or protected activities. Furthermore, no evidence has been presented to raise a genuine issue of material fact which would allow plaintiff's claims to survive summary judgment on the sole basis of suspicious temporal proximity. *See Breeden*, 532 U.S. at 273.

Accordingly, because plaintiff has not produced any evidence that demonstrates a genuine issue of material fact with respect to whether retaliation was a but-for cause of any of the adverse action taken against her, defendants must be granted summary judgment with respect to such claims. *See Evans*, 246 F.3d at 355; *Shackelford*, 190 F.3d at 408; *McDaniel*, 770 F.2d at 1346.

---

[46] R. Doc. No. 147-27, at 26; *see also* R. Doc. No. 147-27, at 19 ("In December I had been harassed; I had been demoted; and I was traumatized by the undue actions of the Housing Authority and the retaliation. And I had been almost forced to resign from their treatment, and I asked to use annual leave.").
[47] R. Doc. No. 132-3, at 10.
[48] R. Doc. No. 132-3, at 9.

### C.    Breach of Contract Claims

#### 1.    Breach of Contract

Plaintiff bases her breach of contract claims on defendant's denial of her alleged "right to participate in the Voluntary Early Retirement Incentive ('VERI') [program], and their failure to adhere to applicable Louisiana Civil Service rules and regulations regarding the terms and conditions of employment, and failure to adhere to applicable HANO Rules and Regulations regarding terms and conditions of employment."[49] Defendant asserts that "Plaintiff's breach of contract claims fail as she cannot show the existence of a contact between herself and Defendant."[50]

Under Louisiana law, four elements are necessary for the formation of a valid contract: "(1) the parties must have the capacity to contract; (2) the parties must freely give their mutual consent to the contract; (3) the parties must have a cause or reason for obligating themselves; and (4) the contract must have a lawful purpose." *Ingraffia v. NME Hosps., Inc.*, 943 F.2d 561, 565 (5th Cir. 1991). Plaintiff was an at-will employee of defendant,[51] so she did not have any right or expectation to continued employment unless it was guaranteed by a separate contract or statute. *See Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 429 (5th Cir. 1996). Employees at will do not have any property interest in their employment. *See id.* at 429-30.

---

[49] R. Doc. No. 47, ¶ 22; *see also* R. Doc. No. 147, at 15-17.

[50] R. Doc. No. 132-12, at 19.

[51] In her opposition, plaintiff states, "HANO conveniently ignores the [civil service] protections attendant to Plaintiff's classified civil service position, as well as the rules set forth in the Employee Handbook, when speciously arguing that Plaintiff was an at-will employee without any contractual protections." R. Doc. No. 147, at 16. However, the HANO Employee Personnel Manual, which purportedly provides plaintiff with contractual protections, is unequivocal: "All employees of HANO are considered 'at will' employees and may be terminated with or without cause at any time." R. Doc. No. 147-19, at 6.

With respect to the VERI program, plaintiff points to a March 11, 2008 letter from Cato-Turner to all HANO employees that provided a "General Notice of Impending Layoff Avoidance Measure."[52] Nothing about the letter suggests that it is a binding contract or offer to contract: it describes itself as a "General Notice" and it outlines a program that defendant was "proposing," making clear that the details were forthcoming and that the plan had yet to be approved.[53] Furthermore, plaintiff states that she "submitted her application" to the program, that her "request was ignored and not processed by HANO,"[54] and that the March 11, 2008 letter was an "announcement."[55] The letter does not purport to be an offer, plaintiff was never accepted into the VERI program, and there is no evidence of a meeting of the minds between plaintiff and defendant. *See* La. Civ. Code art. 1927; *Rainey v. Entergy Gulf States, Inc.*, 35 So. 3d 215, 227 (La. 2010) ("One who proposes the contract is bound if the offer is made in terms, whether by words, actions, silence or inaction, which evince a design to give the other party the right of concluding by assent and the other party timely assents."). Accordingly, with respect to the VERI program, there was no contract between plaintiff and defendant.

Plaintiff concentrates only on the VERI program and she does not offer any opposition to defendant's motion with respect to her breach of contract claims regarding the civil service rules or the HANO rules.[56] To the extent that plaintiff has not waived those claims, however, the law supports summary judgment in favor of defendant.

---

[52] R. Doc. No. 147, at 15 (citing R. Doc. No. 147-28).
[53] R. Doc. No. 147-28.
[54] R. Doc. No. 147, at 15.
[55] R. Doc. No. 147, at 16.
[56] *See* R. Doc. No. 147, at 15-17.

With respect to the HANO rules and regulations, the Fifth Circuit has recognized that Louisiana law does consider a staff handbook, such as the one submitted by plaintiff,[57] to constitute a contract. *See Wallace*, 79 F.3d at 431 ("[W]e can find no case in which a Louisiana court has found an employment manual to create a contract."); *Gilbert v. Tulane Univ.*, 909 F.2d 124, 126 (5th Cir. 1990) (quoting *Wall v. Tulane Univ.*, 499 So. 2d 375, 375-76 (La. Ct. App. 1986)); *see also Drs. Bethea v. St. Paul Guardian Ins. Co.*, No. 02-1444, 2002 WL 31697714, at *7 (E.D. La. Oct. 20, 2002) (Duval, J.) ("[C]ases generally find [an] at-will employee's reliance on a representation of continued employment or a promise of future benefits to be unreasonable as a matter of law."); *Wohlschlaeger v. Fairmount Hotel Co.*, No. 95-922, 1995 WL 468305, at *2 (E.D. La. Aug. 2, 1995) (Duval, J.) ("Further, courts applying Louisiana law have held that employee handbooks do not constitute binding promises to continue the benefits described therein.").

With respect to the civil service rules, "In April 2008, HUD exempted HANO from Louisiana's civil rules." *McGowan*, 388 F. App'x at 435. The Fifth Circuit affirmed that decision, so defendant is no longer bound by such rules. *Id.* The LCSC has acknowledged that it no longer has any authority regarding plaintiff's relationship to HANO.[58] Plaintiff has not cited any authority to show that the civil service rules constitute a contract or that the LCSC or this Court has any authority to enforce civil service rules. *See id.* ("[O]nce HUD properly exempted HANO from Louisiana's civil service laws, LCSC could no longer enforce those laws.").

Accordingly, because there is no genuine issue of material fact as to whether an enforceable contractual right ever existed between plaintiff and defendant, summary judgment is proper with respect to those claims.

---

[57] R. Doc. No. 147-19.
[58] R. Doc. No. 132-10, at 2.

2.     *Reimbursement*

The Court requested additional briefing from the parties with respect to plaintiff's only other remaining claim, which is for reimbursement of out-of-pocket expenses that she allegedly incurred in the course of her employment.[59] Defendant timely filed the requested memorandum,[60] and plaintiff's counsel subsequently advised the Court that plaintiff opposed defendant's motion for summary judgment with respect to this issue but that plaintiff would not file any additional briefing.

Defendant argues that plaintiff's reimbursement claim falls under Article 3494(1) of the Louisiana Civil Code, which provides a three-year prescriptive period for any "action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board . . . ." According to defendant, "[B]ecause Plaintiff filed the instant litigation on July 17, 2012, or more than three years after her January 30, 2009 termination date, summary judgment is appropriate dismissing the reimbursement claim."[61]

Defendant cites to *Assaleh v. Sherwood Forest Country Club, Inc.*, 991 So. 2d 67 (La. App. 1 Cir. 2008), wherein the Louisiana Court of Appeal for the First Circuit rejected the plaintiff's "argument that his claim for expenses owed him as a consequence of the employment relationship are not governed by the three-year prescriptive period because reimbursement of expenses cannot be considered compensation." *Id.* at 72. The court held that Article 3494's

---

[59] R. Doc. No. 154, at 1. Plaintiff alleges that she spent $1,879.82 on postage and other miscellaneous supplies for which she was never reimbursed. R. Doc. No. 12, ¶¶ 20-21. This claim was originally alleged under an unjust enrichment theory, R. Doc. No. 47, at 10, but plaintiff's counsel advised the Court that plaintiff was seeking reimbursement under a breach of contract theory, and any unjust enrichment claims were dismissed with prejudice, R. Doc. No. 154, at 1.

[60] R. Doc. No. 155.

[61] R. Doc. No. 155, at 1-2.

reference to "an action for the recovery of . . . money" explicitly included such a claim. *Id.* (quoting La. Civ. Code art. 3494). The court concluded, "All of [the plaintiff]'s claims arise from his employment relationship with the club and we find that all of the claims are subject to the prescriptive period set forth in Article 3494." *Id.* Accordingly, because plaintiff has not offered any contrary authority or opposing argument, the Court finds that plaintiff's reimbursement claim falls within Article 3494,[62] and that plaintiff's reimbursement claim has prescribed.

The latest conceivable date that the Court could use for the beginning of the three-year prescriptive period is January 30, 2009, the effective date of plaintiff's final termination.[63] Plaintiff's reimbursement claim, therefore, prescribed on January 30, 2012, over six months before she initiated this litigation.[64]

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's claims for retaliation pursuant to Title VII and the ADEA, and plaintiff's claims for breach of contract, including her reimbursement claim, are **DISMISSED WITH PREJUDICE**.

---

[62] But see *Price v. Stranco, Inc.*, 887 So. 2d 82 (La. App. 1 Cir. 2004), an earlier divided opinion from the Louisiana Court of Appeal for the First Circuit.

[63] Plaintiff has not identified any date that the prescriptive period began to run.

[64] *See* R. Doc. No. 1.

**IT IS FURTHER ORDERED** that plaintiff's motion[65] to continue the trial and the pretrial deadlines and plaintiff's corresponding motion[66] for an expedited hearing are **DISMISSED AS MOOT**.

New Orleans, Louisiana, March 5, 2014.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[65] R. Doc. No. 159.
[66] R. Doc. No. 158.